UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY TIBBETTS,<br>    Plaintiff, | : | |
| v. | : | Civil Action No.<br>3:97 CV 2561 (CFD) |
| WILLIAM STEMPEL, ET AL.,<br>    Defendants. | : | |
| JEFFREY TIBBETTS,<br>    Plaintiff, | : | |
| v. | : | Civil Action No.<br>3:97 CV 2682 (CFD) |
| DOROTHY K. ROBINSON, ET AL.,<br>    Defendants. | : | |
| JEFFREY TIBBETTS,<br>    Plaintiff, | : | |
| v. | : | Civil Action No.<br>3:97 CV 2683 (CFD) |
| RICHARD C. LEVIN, ET AL.,<br>    Defendants. | : | |

## RULING ON PENDING MOTIONS

In these three cases, which were consolidated for pre-trial and discovery purposes, Jeffrey Tibbetts, proceeding *pro se*, brought a total of thirty-one counts against the defendants, which included Yale University, the Yale Corporation and various officials and employees of Yale University. On January 20, 2005, the Court granted the defendants summary judgment in all

1

three cases. Pending is Tibbetts' motion to alter or amend the judgment and the defendants' motion for a permanent injunction barring Tibbetts from any additional litigation. For the following reasons, Tibbetts' motion is denied and the defendants' motion is granted as modified by the Court.

**I      Background**

The factual background underlying this litigation has been recounted previously by the Court, familiarity with which is presumed. See Tibbetts v. Stempel, 354 F.Supp.2d 137 (D.Conn. 2005) (ruling on motion for summary judgment). Consequently, it need not be recounted here. The procedural history of the three consolidated cases, and related cases, is relevant to the instant motions, however. Therefore, the Court will review it.

A) *Dittes* and the Three Consolidated Actions:

The first action arising between the parties was Tibbetts v. Dittes, et al., 3:95CV00995(AVC), which was filed in the District of Connecticut on May 30, 1995, and assigned to Judge Covello.[1] The amended complaint in Dittes, dated January 23, 1996, contained four counts: (1) intentional infliction of emotional distress; (2) defamation; (3) breach of contract; and (4) intentional interference with prospective business advantage. On May 17, 1996, Judge Covello ruled that named defendants Adams and Huebner had not properly been served, and, therefore, they were dismissed as defendants. Tibbetts requested leave to file a memorandum that he claimed would show that those defendants were properly served. Despite

---

[1] The named defendants were: Dittes; Dwayne Huebner, who was the Associate Dean of Academic Affairs at the time; the Yale Corporation; and the Administrators and Faculty of the Yale Divinity School ("YDS"), including Dean Thomas Ogletree, Admissions Director James Garrett, Former Professional Studies Committee Chairman Harry Adams, Director of Yale Summer School Penelope Laurens and YDS Registrar Detra MacDougall.

having had his initial request to file the memorandum granted, as well as four applications for extensions of time, Tibbetts failed to file his memorandum. On April 11, 1997, Judge Covello denied Tibbets' fifth motion for an extension of time.

On June 2, 1997, Judge Covello granted Tibbetts' request for an extension of time until June 27, 1997, to further amend his complaint. Tibbetts did not file an amended complaint within this time period. On August 26, 1997, however, Tibbetts requested leave to file two amended complaints, which sought to add counts related to: (1) his suspension from YDS for plagiarism; (2) the academic misconduct charges brought against him in 1990 and the subsequent investigation; (3) his dispute with Yale over disciplinary records arising from the plagiarism and academic misconduct charges; (4) his 1994 resignation from his White House position; and (5) Yale's response to the Dittes lawsuit. On December 4, 1997, Judge Covello denied Tibbetts' request to amend on the grounds that it was untimely and that it would prejudice the defendants.[2] On December 8, 1997, as a result of his failure to successfully amend his complaint in Dittes, Tibbetts filed a new action, Tibbetts v. Stempel et al., 3:97CV2561(CFD).[3]  A few weeks later, on December 23, 1997, Tibbetts filed two more actions: Tibbetts v. Robinson et al.,

---

[2]Specifically, Judge Covello stated: "In this case, the plaintiff seeks to amend more than two years after the filing of the original complaint and after the close of discovery. The plaintiff has failed to provide a satisfactory explanation for the delay in filing the proposed amendment and permitting the amendment at this stage of the litigation, after the close of discovery, would prejudice the defendant."

[3]The complaint named the following defendants: William Stempel and Dorothy Robinson (of the Yale Office of General Counsel); the President and Fellows of Yale ("the Yale Corporation"); and past Presidents and Fellows of Yale.

97CV2682(CFD)[4] and Tibbetts v. Levin et al., 97CV2683(CFD).[5]  All of these new cases were assigned to this Court.

On April 28, 1998, Judge Covello stayed his case pending the resolution of Tibbetts' bankruptcy proceeding in the Eastern District of Virginia, and gave Tibbetts thirty days from the date of that resolution to file an amended complaint in Dittes.  The bankruptcy proceeding was concluded on December 4, 1998.  Therefore, Tibbetts had until January 4, 1999, to file an amended complaint.  Tibbetts failed to comply with this deadline.  On December 29, 1999, however, Tibbetts filed another motion to amend his complaint.  Judge Covello denied this motion as untimely, noting that "allowing the plaintiff to amend his complaint, adding four new causes of action, only 5 days before trial, and over two years since the close of discovery, would be prejudicial to the defendants." (See 3:97CV2561 Doc. #52: Ex. V).  The case then proceeded to trial.  At the close of the evidence, Judge Covello granted the defendants' motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure with respect to the counts of breach of contract and interference with prospective advantage.  The remaining two counts, defamation and intentional infliction of emotional distress, were submitted to the jury, which returned a defendants' verdict on both counts.  On March 29, 2000, Judge Covello rendered judgment in accordance with the jury's verdict, and that judgment was entered onto the docket sheet on March 30, 2000.  Subsequently, Tibbetts filed, *inter alia*, a motion for a new

---

[4]The complaint named the following defendants: Robinson and Stempel; the President and Fellows of Yale ("the Yale Corporation"); and past Presidents and Fellows of Yale.

[5]The complaint named the following defendants: Richard Levin, the President of Yale; Robinson and Stempel; the President and Fellows of Yale ("the Yale Corporation"); past Presidents and Fellows of Yale; and Dittes.

4

trial, a motion to vacate the judgment, a motion for sanctions, and a motion to disqualify the presiding judge. Those motions were denied. On March 30, 2001, Tibbetts filed a notice of appeal with the United States Court of Appeals for the Second Circuit, which indicated that he was appealing several issues, including "the issue of amending a party's pleadings."

Due to the notice of appeal filed in Dittes, this Court denied the defendants' motions for summary judgment in the instant three actions without prejudice. More specifically, this Court concluded that, given the defendants' reliance on the doctrine of res judicata and Tibbetts' status as a pro se litigant, it would be inappropriate to evaluate the Dittes judgment for preclusive effect prior to the Second Circuit's review of that judgment.[6] In so ruling, however, this Court noted that "[t]he defendants may revive the motions for summary judgment by filing a notice to that effect" after the issuance of the Second Circuit's opinion in Tibbetts v. Dittes.

On February 13, 2002, the defendants' motion to dismiss the Dittes appeal as untimely was denied by the Second Circuit. On September 16, 2003, however, Tibbetts' appeal was dismissed *sua sponte* due to Tibbetts' failure to abide by the schedule set forth in the Second Circuit's Civil Appeal Management Plan. On December 8, 2003, Tibbetts' motion for reinstatement of his appeal was denied. Consequently, on January 13, 2004, the defendants filed notice that their motion for summary judgment in the three consolidated actions was reinstated. The defendants and Tibbetts then filed supplemental memoranda in support of, and against, that motion. On January 20, 2005, the Court granted the defendants' motion for summary judgment, finding that the doctrine of *res judicata* precluded all of Tibbetts' claims in the three consolidated

---

[6]However, "[a] final judgment in federal court can be the basis for claim preclusion despite the fact that an appeal is pending, or that the judgment may be subject to appeal in the future." 18 Moore's § 131.30[2][c][ii] (citing cases).

actions.

Tibbetts also has sought numerous forms of post-appeal relief from Judge Covello in the Dittes matter, including a motion to vacate the September 16, 2003 order of the Second Circuit, a motion to vacate the judgment issued by Judge Covello as void due to violations of Tibbetts' right to due process of law, and a motion to consolidate Dittes with the three actions pending before this Court. On December 22, 2004, Judge Covello denied the motion to consolidate, and on January 5, 2005, Judge Covello denied the two motions to vacate. On February 4, 2005, Tibbetts filed a motion to appeal from the ruling denying the motions to vacate. That appeal remains pending. On February 4, 2005, Tibbetts also filed a renewed motion to vacate the judgment pursuant to Fed. R. Civ. P. 60(b)(4). On August 2, 2005, Judge Covello denied that motion, and, in addition, issued the following order: "The clerk of the court may not accept any further pleadings/filings in this matter unless specifically authorized by the court."

As noted previously, there are two motions pending before this Court in the three consolidated actions: On January 31, 2005, Tibbetts moved to amend and alter the judgment in the three consolidated actions pursuant to Fed. R. Civ. P. 59, and requested an extension of time to file a memorandum in support thereof. On February 3, 2005, the Court granted Tibbetts the requested extension of time to file his memorandum, and on February 15, 2005, Tibbetts filed his memorandum. On February 22, 2005, the defendants filed a memorandum in opposition.

On February 11, 2005, the defendants filed their motion for a permanent injunction pursuant to the All Writs Act, 28 U.S.C. § 1651(a) and Fed. R. Civ. P. 59(e). The motion requests that the Court issue a permanent injunction barring Tibbetts from "commencing, in any United States district court, any new actions against Yale University or any persons currently or

formerly affiliated with or employed by Yale University (including its outside counsel and members of the Yale Corporation) asserting claims that arise out of or relate to Tibbetts' tenure as a student at Yale (including but not limited to matters of academic discipline and student records) or judicial proceedings to which Tibbetts is or has been a party, without first obtaining leave from a judge of this Court."

  B) The *President and Fellows of Yale College* Action:

The fifth action between Tibbetts and the defendants in the District of Connecticut was Tibbetts v. President & Fellows of Yale College, et al., No. 3:01CV1763 (CFD). The procedural history of that case is as follows: On September 18, 2001, Tibbetts filed an action against the President and Fellows of Yale University, several members of the Office of General Counsel of Yale University ("OGC") and members of the law firm representing Yale. On November 21, 2001, Tibbetts filed a five-count amended complaint, which set forth claims for: (1) fraud on the United States District Court in Tibbetts v. Dittes; (2) "unfair prejudice and surprise"; (3) request for a protective order; (4) fraud on the United States District Court in the three consolidated cases; and (5) "malicious defense" pursuant to Conn. Gen.Stat. § 52-568. In his prayer for relief, Tibbetts requested that this Court set aside the judgment in Dittes, grant him a new trial on the merits, award the damages requested in Dittes, award him punitive damages in the amount of $40,000,000 plus attorney's fees, award him double or treble damages under § 52-568, enter a protective order in his favor and enter an order continuing discovery in the three consolidated cases.

On May 9, 2003, the defendants moved to dismiss each count of the complaint. On July 8, 2003, this Court granted Tibbetts' motion for an extension of time, granting him until July 25,

2003, to respond to the motion to dismiss. On October 8, 2003, Tibbetts filed a motion to hold the motion to dismiss in abeyance pending the resolution of his appeal in Dittes. Due to the resolution of the the appeal in Dittes, however, the Court denied Tibbetts' motion. On July 22, 2004, the Court then granted Tibbetts a second motion for extension of time, until August 16, 2004, to respond to the motion to dismiss. Due to Tibbetts' subsequent dismissal of his attorney, the Court granted him an additional extension of time, until December 14, 2004, to file his response. On January 6, 2005, the Court issued an order indicating that a response to the motion to dismiss still had not been received, and granting Tibbetts one final extension of time to submit his response. Despite these numerous extensions of time, and the passage of over a year and a half since the motion to dismiss was filed, Tibbetts failed to file a response. On January 20, 2005, the Court granted the defendants' motion to dismiss and ordered the clerk to close the case. See Tibbetts v. President and Fellows of Yale College, 2005 WL 162382 (D.Conn., Jan. 20, 2005) (ruling on motion to dismiss).[7]

On January 28, 2005, Tibbetts filed a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). On February 18, 2005, the defendants filed a memorandum in opposition. On February 28, 2005, Tibbetts also filed a motion to amend his complaint. In a ruling dated August 31, 2005, the Court denied Tibbetts' Rule 59(e) motion on the merits, and denied his motion to amend as moot.

C) The Case in the Eastern District of Virginia

---

[7]On January 25, 2005, the Court finally received a memorandum in opposition to the motion to dismiss from Tibbetts. However, rather than address the arguments raised in motion to dismiss, his memorandum addressed arguments raised in the pending motion for summary judgment in the three consolidated actions.

As mentioned, in 1998 Tibbetts filed a Chapter 7 petition in the United States Bankruptcy Court for the Eastern District of Virginia in which he listed a debt to Yale University in the amount of $11,230.18. Apparently, Yale reached an agreement with the bankruptcy trustee to forgive the debt in exchange for a release from Tibbetts' various lawsuits. However, Tibbetts then converted his case to one under Chapter 13 of the U.S. Bankruptcy Code, thereby depriving the Chapter 7 trustee of his authority to settle the actions Tibbetts had pending against the defendants in Connecticut.[8] Yale, along with Tibbetts' student loan provider, moved to reconvert the bankruptcy case to Chapter 7. Prior to the resolution of that motion, however, the bankruptcy court granted Tibbetts' voluntarily petition to dismiss his case in December, 1998.

On December 1, 2000, Tibbetts brought an action against the Yale Corporation, Robinson, Stempel and various other parties connected to Yale in the Eastern District of Virginia, alleging that the defendants committed various torts in the course of the prior bankruptcy proceeding, and setting forth claims for abuse of process, malicious use of process, malicious prosecution, intentional infliction of emotional distress, and vexatious suit under Conn. Gen. Stat. § 52-568. On June 18, 2001, that district court granted the defendants' motion to dismiss with prejudice.[9] Tibbetts appealed to the Court of Appeals for the Fourth Circuit, which

---

[8] As the Court of Appeals for the Fourth Circuit noted in a related proceeding: "The settlement provided that Yale would 'pay the trustee $4,000 in return for a full and complete release of any and all claims made by Tibbetts or the Trustee against Yale and related others." Tibbetts v. Yale Corp., 47 Fed. Appx. 648, 651 (4th Cir. 2002). The Fourth Circuit also noted, however, that "Tibbetts was loathe to relinquish his lawsuits . . . [and he] filed a Motion to Convert his bankruptcy from Chapter 7 to Chapter 13." Id.

[9] The Fourth Circuit described the full procedural history of Tibbets v. Yale Corp. as follows:

On March 28, 2001, Tibbetts filed his First Amended Complaint. In early May,

9

affirmed the district court's dismissal. Tibbetts v. Yale Corp., 47 Fed. Appx. 648, 651 (4th Cir. 2002).

    C) Legal Malpractice Case

In Tibbetts v. Sweetland, 3:01CV923, which was filed in the United States District Court for the District of Columbia, Tibbetts brought claims for negligence, breach of fiduciary duty, misrepresentation and fraud, and violations of the District of Columbia Consumer Protection & Procedures Act, D.C. Code § 28-3901 *et seq*., against Rodney Sweetland, an attorney. The complaint in that action alleged that Sweetland breached his agreement to represent Tibbetts in the Dittes matter in Connecticut, and, therefore, Tibbetts had to prosecute that action *pro se*, to adverse results. Sweetland filed a motion to dismiss, and, after numerous extensions of time, Tibbetts filed a memorandum in opposition. The district court granted Sweetland's motion to dismiss, finding that Tibbetts had failed to state a claim upon which relief may be granted.

Tibbetts appealed from that ruling, and, after considerable delay and motions for extension of time, the United States Court of Appeals for the District of Columbia Circuit dismissed Tibbetts' appeal. In so doing, the Court noted Tibbetts' failure to head a final warning

---

    2001, Defendants moved to dismiss. On May 8th, Tibbetts filed a Motion for Leave to Amend his complaint, which was dismissed without prejudice on May 18th. The court scheduled a hearing on Defendants' motions to dismiss for June 15, 2001. On June 8th, Tibbetts again filed a Motion for Leave to Amend Complaint. His proposed amendments, if allowed, would have added (I) factual support for the abuse of process, malicious prosecution, and vexatious suit counts; (ii) new counts for breach of contract and "malicious defense"; and (iii) USAF as a defendant in place of USA Group Foundation. On June 18th, the district court dismissed the case with prejudice, denying Tibbetts leave to amend without elaboration.

Tibbetts v. Yale, 47 Fed. Appx. at 651-52 (internal citations omitted).

concerning extensions of time, and concluded that "[Tibbetts'] continuing history of unmet deadlines in both district and this court warrants the extreme sanction of dismissal."

The district court also addressed several post-judgment motions filed by Tibbetts. The district court first denied a motion to set aside the judgment pursuant to Fed. R. Civ. P. 60(b)(3). Then, over one year later, the district court denied Tibbetts' renewed Rule 60(b)(3) motion to set aside the judgment. Tibbetts then filed an emergency motion to stay, which the district court denied, ordering that "the parties shall not file any more motions in this case without court approval."[10]

## II       Tibbetts' Motion to Alter or Amend the Judgment

Tibbets seeks to alter or amend the judgment in the three consolidated cases in this District pursuant to Rule 59(e), which provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Tibbetts advances several grounds upon which he claims he is entitled to such relief, each of which is without merit.

First, Tibbets claims that the Court erred in applying the wrong date of the final judgment in Dittes.[11] More specifically, Dittes claims that final judgment did not enter in Dittes until May 21, 2001, the date on which Judge Covello ruled on Tibbett's motion for reconsideration of the

---

[10]The defendants also identify other actions Tibbetts has initiated in Virginia and Pennsylvania, and argue that they present further evidence that Tibbetts engages in repetitive and harassing litigation tactics. Because those actions are unrelated to the instant cases, however, the Court will not consider them when addressing the pending motion for a permanent injunction.

[11]As his motion also notes, that date was relevant for the Court's ruling in President and Fellows of Yale College, which found that his Rule 60 motion to alter or amend the judgment in Dittes was, *inter alia*, untimely.

11

denial of his Rule 59 motion for a new trial.[12]  In a separate ruling issued in President and Fellows of Yale College on August 31, 2005, the Court rejected this argument.  In addition, all of Tibbetts' claims are precluded pursuant to the doctrine of *res judicata* due to the final judgment entered in Dittes.  In other words, regardless of whether the judgment was final on March 29, 2000, when judgment entered, or on May 15, 2001, when the motion for reconsideration was ruled on, the judgment in Dittes was certainly a final judgment on January 20, 2005, when the Court found that it was entitled to preclusive effect.

    In an effort to avoid this conclusion, Tibbetts next argues that, because he is entitled to relief from the judgment entered against him in President and Fellows of Yale College, and that action challenges the judgment in Dittes, the judgment issued in Dittes cannot be considered a final judgment.  Consequently, Tibbetts argues, the Court's ruling in this case, which granted the defendants summary judgment based on the preclusive effect of the Dittes judgment, was erroneous.  This argument is also without merit, as his motions for post-judgment relief in President and Fellows of Yale College have been denied, and the judgment in Dittes is entitled to preclusive effect.  The Court notes, moreover, that the judgment in Dittes was entitled to preclusive effect independent of the Court's ruling on Tibbetts' post-judgment motions in President and Fellows of Yale College.

---

[12]On May 15, 2000, Judge Covello denied Tibbetts' motion for a new trial on the ground that it was not filed within ten days of the date of judgment, as required by Fed. R. Civ. P. 59(b), which mistakenly was listed as "February 29, 2000" in that ruling. Tibbetts filed a motion for reconsideration of that ruling, noting that the judgment was signed on March 29, 2000, and arguing, therefore, that his motion for a new trial, which was filed on April 8, 2000, was timely. On March 21, 2001, Judge Covello granted the motion for reconsideration on that ground, but denied the motion for a new trial once again, finding that Tibbetts failed to present sufficient grounds warranting a new trial.

Finally, Tibbetts argues that because he has once again attempted to appeal the judgment in Dittes to the Second Circuit, it cannot be considered a final judgment for purposes of res judicata. This argument also is without merit, as "[a] final judgment in federal court can be the basis for claim preclusion despite the fact that an appeal is pending, or that the judgment may be subject to appeal in the future." 18 Moore's Federal Practice (3d Ed.) § 131.30[2][c][ii] (citing cases).

Consequently, Tibbetts' motion to alter or amend the judgment is denied.

### III    Motion for a Permanent Injunction

The defendants have moved for a permanent injunction that would preclude Tibbetts from:

> commencing, in any United States district court, any new actions against Yale University or any persons currently or formerly affiliated with or employed by Yale University (including its outside counsel and members of the Yale Corporation) asserting claims that arise out of or relate to Tibbetts' tenure as a student at Yale (including but not limited to matters of academic discipline and student records) or judicial proceedings to which Tibbetts is or has been a party, without first obtaining leave from a judge of this Court.

Tibbetts opposes this motion, arguing that it is made in "bad faith," with "unclean hands" and "twists the underlying record to suppress the search for truth and justice." Although the Court finds that the injunction requested by the defendants is too broad, they nevertheless are entitled to injunctive relief. Consequently, for the following reasons, the defendants' motion for a permanent injunction is granted, as modified by the Court.

The defendants' motion requests that the Court amend the judgment pursuant to Rule 59(e) by issuing the requested injunction pursuant to the All Writs Act, 28 U.S.C. § 1651, which provides: "The Supreme Court and all courts established by Act of Congress may issue all writs

13

necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  Thus, it is well settled that "[t]he All-Writs Act grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits."  MLE Realty Assoc. v. Handler, 192 F.3d 259, 261 (2d. Cir. 1999); see also. Sassower v. Sansverie, 885 F.2d 9, 10 (2d Cir.1989); Castro v. United States, 775 F.2d 399, 408 (1st Cir. 1985); Harrelson v. U.S., 613 F.2d 114, 116 (5th Cir. 1980); Ruderer v. United States, 462 F.2d 897, 899 (8th Cir. 1972); Clinton v. United States, 297 F.2d 899, 901-902 (9th Cir. 1961).

As the Second Circuit recently noted, "[i]f a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system."  Hong Mai Sa v. Doe, 406 F.3d 155, 158 (2d Cir. 2005) (quotations omitted).  Prior to restricting a litigant's future access to the courts, a court must consider the following:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Iwachiw v. N.Y. State Dep't of Motor Vehicles, 396 F.3d 525, 528 (2d Cir. 2005) (quoting Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986)).[13]  Consideration of those factors in the context of Tibbetts' litigation history in this District and beyond compels the conclusion that

---

[13]The Court notes that Tibbetts has filed three memoranda in response to the defendants' motion for a permanent injunction.  Cf. Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998) ("[t]he unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard").

the defendants' motion for a permanent injunction should be granted.

First, Tibbetts' actions in this District certainly were duplicative, as each subsequent suit attempted to secure relief that was denied in a previous action, and all either sought relief that was denied in <u>Dittes</u>, or sought to challenge the rulings made by Judge Covello in <u>Dittes</u>. Moreover, it is fair to characterize the later-filed actions, as well as many of the motions and memoranda filed in all of the actions in this District, as vexatious and harassing. In particular, the Court notes that Tibbetts' post-judgment motions in both <u>Dittes</u> and the three consolidated actions demonstrate his refusal to accept findings made by the judges of this District, and they subject the defendants to unwarranted litigation. The vexatious and harassing nature of Tibbetts' actions has already been recognized by the District of Columbia and by Judge Covello in this District, as Tibbetts already has been subject to injunctions against further filings in those action. Second, Tibbetts cannot be said to have had an objective good faith belief in the merits of the lawsuits filed subsequently to <u>Dittes</u>, particularly <u>Tibbetts v. President and Fellows of Yale College</u>, which was filed four years after the three consolidated actions, and which sought substantially the same relief. Even if he did have a good faith belief in the merits of his post-<u>Dittes</u> actions at the time they were filed, such belief has evaporated by this time, and yet he continues to file meritless post-judgment motions which recycle arguments previously rejected by the Court. <u>See, e.g.</u>, Part II of this ruling. Third, although *pro se* parties generally are entitled to extra consideration and leniency from the courts, this leniency does not extend without limits, and restrictions may be placed on *pro se* parties that engage in duplicative, harassing or vexatious litigation. <u>See, e.g.</u>, <u>Iwachiw</u>, 396 F.3d at 529 (affirming restriction on future litigation placed on *pro se* party). As detailed in the section of this ruling setting forth the procedural histories of the

relevant cases, Tibbetts has been accorded a substantial amount of deference by the judges of this District due to his *pro se* status.  Fourth, Tibbetts' actions, and the voluminous filings made by him therein, certainly have caused the defendants needless expenses, and have posed an unneccessary burden on this Court.  Finally, although alternative sanctions have been considered, the Court finds that they would not be adequate to protect the defendants or the Court from additional duplicative, harassing or vexatious behavior from Tibbetts.  The Court notes that the injunction being ordered today only applies in this District, and only applies to actions or controversies related to Tibbetts' tenure at Yale University–a subject that has received more than enough attention from the judges in this District.  The injunction being issued is narrower than the one requested by the defendants, and the Court considers it be be narrowly tailored to the facts warranting such relief.  In other words, the injunction ordered today "ensures that plaintiff's ability to pursue meritorious claims is not foreclosed."  Iwachiw, 396 F.3d at 529.

**III     Conclusion**

Tibbetts' motion to alter or amend the judgment **[Doc. # 137]** is **DENIED**.  The defendants' motion for a permanent injunction **[Doc. # 139]** is **GRANTED**, and it is hereby **ORDERED** that Jeffery Tibbetts is permanently enjoined from:

> (1) bringing any future proceedings related to his tenure at Yale University in the District of Connecticut without the Court's prior permission; and

> (2) filing any papers in connection with any case already pending in the District of Connecticut unless prior to any such submission:

>> (a) he files a one-page written application to the Court for permission to file papers in that case;
>> (b) in that one-page written application, he explains why he seeks permission to file such papers;
>> (c) the Court grants his application in a written order; and

16

>
> (d) he submits a copy of the Court's order granting him permission to file papers with the papers he has been allowed to file, unless such papers are in response to those submitted by his adversary.

See Iwachiw, 396 F.3d at 529 (approving the use of similar restrictions).

SO ORDERED this   31st   day of August 2005, at Hartford, Connecticut.

>                    /s/ CFD
> **Christopher F. Droney**
> **United States District Judge**